In the Matter of the Application of LINWOOD J. PUTNAM and JOHN R. FAIRBANKS, Petitioners, for an Order against JAMES MARSHALL, President, and Others, as and Constituting the Board of Education of the City of New York, Respondents.*

Supreme Court, Kings County, October 10, 1940.

* Affd., 261 App. Div. 976.

*Ryan, Cassin & Barry* [*William F. Cassin* of counsel], for the petitioners.

*William C. Chanler, Corporation Counsel* [*Nicholas Bucci* of counsel], for the respondents.

LOCKWOOD, J.   This is an application under article 78 of the Civil Practice Act for an order, among other things, to compel the respondent board of education to comply with the alleged mandatory custodial salary schedules adopted by it on December 29, 1927, and on file with the State Commissioner of Education since December 30, 1927, and to nullify the acts of the respondent board taken on June 12 and June 26, 1940, which are alleged to be in violation of such schedules in that they effect a substantial reduction in the custodial salary schedules in fuel oil-burning schools.

The material facts are not disputed.   The principal legal question is whether under the existing statutes the board of education has the power to reduce custodial salary schedules in schools which are heated by fuel oil.

There is some dispute as to whether the care and operation of a large oil-burning plant such as is used in the schools requires less work and attention than that required by a coal-burning plant. This issue, however, has no materiality in the determination of the question of law presented.

The joint petitioners are custodian engineers in the competitive class of the classified civil service.   Both were duly designated and are now engaged as custodian engineers in public schools that are on the indirect or measurement basis for custodial compensation. Under this indirect system, the one generally in use, each school is given an allowance for custodial compensation, based on size, floor area, paved surfaces and other factors affecting the amount of work necessary for operation and maintenance.   This allowance goes with the building.   The custodian engineer selects his help, not from competitive civil service lists, but subject to the approval of the

board of education, and pays them in accordance with a compulsory wage scale order established by such board.

Under the other — the direct system, with which we are not now concerned — the custodian and other help are competitive civil service employees and are paid fixed salaries. This system is in effect in only about six schools.

Custodians and custodian engineers may be transferred from one school to another by the board.

Chapter 680 of the Laws of 1920 (Education Law, § 883 *et seq.*), sponsored in the Legislature by the late Justice CHARLES D. DONO-HUE, then an Assemblyman, and the writer, then a State Senator, transferred the power to fix the salaries of the various board of education employees from the board of aldermen and the board of estimate and apportionment to the board of education, and set forth certain minimum salary schedules applicable to members of the teaching and supervisory staff but not to custodians or custodian engineers. However, that statute required the board of education to fix the compensation of its other employees whose salaries were not fixed by the act, including custodians and custodian engineers, and to file a copy of the schedule and schedule conditions made in conformity with the act with the State Commissioner of Education within thirty days after the adoption thereof.

Accordingly, certain schedules and schedule conditions fixing the compensation of members of the teaching and supervisory staff and other employees, including custodians and custodian engineers, were adopted by the board and filed with the State Commissioner of Education on June 22, 1920.

The " Dick-Rice Law " (Laws of 1927, chap. 572 [Education Law, §§ 491-a, 491-b]) set forth the formula for the payment of school State aid and appropriated $16,500,000 for that purpose. Following the enactment of this law the board on December 29, 1927, readjusted the salaries and compensation of its employees and adopted new salary schedules which were filed with the State Commissioner of Education on December 30, 1927. This resolution fixed the compensation of the members of the custodial staff in accordance with the conditions outlined in the report and tabulation accompanying the resolution. (Journal, Board of Education [1927], p. 3048.)

Buildings were divided into two groups: (A) high-pressure plants with plenum system, and vacuum plants with motor-driven blowers; and (B) gravity return plants with motor-driven blowers for plenum systems, also buildings where low-pressure boilers, hot-air furnaces or stoves are used. Measurement rates for both types of buildings based upon floor space and paved surfaces were prescribed.

On April 17, 1930, chapter 530 of the Laws of 1930 was enacted, amending section 889 of the Education Law, as added by chapter 645 of the Laws of 1919. This section, as further amended by chapter 540 of the Laws of 1931, provides as follows: " The schedules and schedule conditions fixing the salaries of members of the teaching and supervising staffs, the administrative staff and of all other employees of the board of education of a city having a population of one million or over, * * * shall not be less than the salaries and salary increments fixed by the schedules and schedule conditions adopted by such board of education * * * and on file in the office of the State Commissioner of Education on the fifth day of March, nineteen hundred thirty-one."

Because of the foregoing, petitioners contend that the board has not the power to adopt new schedules prescribing custodial allowance or compensation at less than that provided by the schedules and schedule conditions on file March 5, 1931.

The respondent board concedes that the salary schedules and schedule conditions filed on December 30, 1927, were " frozen " as of March 5, 1931, and that it cannot now reduce the amount of custodial salaries without legislative action. (Corporation Counsel's brief, p. 4.)

However, the board contends that the 1927 schedules made no provisions for schools equipped with oil burners, since none were then in use, but applied solely to schools with coal-burning plants. That there are now about thirty-five schools constructed or remodeled within the past three years in which oil burners are in use, and the custodial compensation should not be as high in these schools, because an oil-burning plant requires less work.

The board contends also that the salary schedules as filed applied only to schools existing at that time under conditions then prevailing; that the measurement rates accompanying the salary schedules for the custodial staff were only a guide or formula and did not constitute schedules or schedule conditions. It is urged also that the board has power to adopt new measurement rates for oil-burning schools, since no prior provision had been made for such schools.

The board's claim that there is less work in attending an oilburning plant than one using coal would probably be sound as to a small household oil burner as compared to a small household coal furnace but it would seem that a large oil-burning plant with its storage system and various appliances and safety devices, upon which depends the health and safety of many children, would require constant and expert supervision.

It is well known that when the various surface and elevated lines converted their motive power from steam to electricity, the compensation of the engineers and assistant engineers or firemen was not decreased but, on the contrary, has increased through the years.

In any event the Legislature has withheld from the board of education the power to make new salary schedules at lower rates, so, under the present statute, the board is forbidden to reduce custodial compensation below that fixed in the schedules filed in 1927.

The board's resolution of December 29, 1927, provides: " That the compensations of the members of the custodial staff be and they hereby *are fixed* in accordance with the conditions outlined in the following report and accompanying tabulations to take effect January 1, 1928." (Italics added.)

This resolution, together with the attached " Principles Involved in the Readjustment of Janitorial Compensation " and " Measurement Rates for Custodial Compensation," fixed the compensation of the board's custodial staff definitely and with certainty. Nothing remained but the mathematical calculation of applying the principles and rates to a particular school building in order to determine the compensation due to the custodian thereof.

These schedules were on file with the State Commissioner of Education on March 5, 1931. The Legislature has specified that the schedules and schedule conditions fixing the salaries of employees of the board of education shall not be less than the salaries and salary increments fixed by the schedules and schedule conditions adopted by the board and on file in the office of the State Commissioner of Education on March 5, 1931.

It follows that under the present statute the board may not, by amendment, reclassification or otherwise, reduce the compensation of its custodial staff. The board may question the wisdom of the legislative mandate, but both it and the court are obliged to obey it.

The relief sought by petitioners is granted.